## Hawkins v. Northern Coal & Coke Company and Jacob Baumgardner.

(Decided October 24, 1911.)

### Appeal from Pike Circuit Court.

Husband and Wife—Ownership of Land—Evidence Considered and Adjudged to Belong to the Husband.—R. conveyed a tract of land to J. B., who bought it and paid for it. J. B. asked R. to make another deed to his wife, which he refused to do. Thereafter, J. B. erased his name from the deed and substituted therefor his wife's name and the deed was so put to record. After that, J. B.'s wife left him and moved to another State and he obtained a divorce from her and she married A. J. B. than sued for the land and the evidence shows he bought and paid for it. Held, that under section 2121, Kentucky Statutes, and section 425, Civil Code, he was entitled to have the property, restored to him; the chancellor holding that because of the abandonment and divorce he was entitled to have it restored to him.

R. E. CHASE and P. B. STRATTON for appellant.

BUTLER MOORE and ROSCOE VANOVER for appellees.

YORK & JOHNSON for Northern Coal & Coke Co.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On the 9th of January, 1891, William J. Roberts and his wife conveyed a tract of land in Pike County, Kentucky, to Jacob Baumgardner. The consideration for this conveyance was $200, which was paid by him at that time. Some time after the conveyance Baumgardner returned to Roberts and requested him to make another deed for this same property to Elizabeth Baumgardner, his wife, stating that he wanted her to have the property. This Roberts declined to do; and thereafter Baumgardner erased his own name wherever it appeared in the deed and substituted that of his wife, Elizabeth. In this way the paper was put to record.

Some two years thereafter Mrs. Baumgardner abandoned her husband and went over into Virginia and has ever since resided there. Baumgardner continued to reside upon the place which he had bought from Roberts, and at the date of this litigation was still living there. After the lapse of something more than a year from the time when she abandoned him he instituted a suit for di-

vorce upon this ground. The case was regularly prepared, and upon final hearing the relief asked was granted. Baumgardner was given the care and custody of their four children, the youngest of whom was then about one year old. Shortly after the granting of this divorce she married one Hawkins, and at some time since that date, not definitely shown in the record, but prior to 1902 Jacob married again.

In January, 1902, Jacob and his wife entered into a contract with the Ohio & Big Sandy Land Association by which they obligated themselves to convey to said association the coal and mineral right under this land. The Northern Coal & Coke Co. by assignment became the owners of this contract, and in July, 1906, brought suit against Baumgardner and his wife for the specific performance thereof. Elizabeth Hawkins, Baumgardner's first wife, was made a party to this suit. She answered, claiming the land under the deed, and pleaded that she had furnished the money with which to pay for same. This was denied, and the proof was, in the main, directed toward establishing this mooted question. Upon final hearing the chancellor adjudged Jacob Baumgardner to be the owner of the land, and entered a judgment directing that the contract which he had entered into with the Ohio & Big Sandy Land Association be carried into effect and a conveyance made in accordance with its terms to the Northern Coal & Coke Co. From that judgment Mrs. Hawkins appeals.

Roberts, the grantor, the clerk who took the acknowledgment, and Baumgardner, all testify that the deed was made to Jacob, and not to his wife, Elizabeth. Jacob testifies that he made the change in the names in the deed, and the paper itself shows plainly that it was so changed. There is no evidence to the contrary on this point. Jacob testifies that he paid for the land with his own money; and he introduces a witness who shows where $112.50 of this money came from. Roberts, also, says that Jacob paid for the land. Opposed to this testimony is the unsupported statement of his wife, Elizabeth, who says that it was her money. On this evidence the chancellor was warranted in finding that the money was paid by Jacob and that he was, in fact the owner of the land.

As to what induced him to make this change in the names, there is some conflict in the evidence. Appellant testifies that the change was made in order to invest her

with the title because she had furnished the money; while Jocab says it was done to satisfy her, he believing that she intended to live with him as his wife. There is also some intimation in the record that they may have been actuated by a desire to better settle with some of their creditors, although it is not shown that at that time they had any. Upon the whole the weight of the testimony supports the claim of Jacob, that the conveyance was made to satisfy his wife; and it is apparent that it would not have been made except on account of the marital relation.

From the conclusion which we have reached it is unnecessary to pass upon the question as to what effect this attempted change in the name of the grantee in the deed had upon the conveyance, for inasmuch as the conveyance, if it was a valid conveyance, was made to the wife on account of or growing out of the marital relation, it should have been, upon the entry of the decree of divorce, restored to Jacob. Section 2121, Kentucky Statutes, provides that:

"Upon final judgment of divorce from the bond of matrimony the parties shall be restored such property, not disposed of at the commencement of the action, as either obtained from or through the other before or during the marriage in consideration thereof."

And section 425, Carroll's Code, dealing with the same subject, provides that:

"Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage."

Thus, under both the Statute and Code provisions Jacob was entitled to have this property restored to him. As the question of property rights was not litigated in that suit either party might have had this question determined in a suit subsequently brought for that purpose. The proceeding instituted in the Pike Circuit Court, in which the plaintiff sought to have the contract between it and Jacob enforced, raised this question and made necessary its determination. The proof showing that the property was bought and paid for by Jacob, and that his

wife, Elizabeth, obtained the paper under which she claims title by reason of their marital relation, the chancellor was warranted in holding that because of the abandonment and divorce he was entitled to have it restored to him.

Judgment affirmed.