Booth, Judge,
delivered the opinion of the court:
This is a tax case. The facts have been stipulated. The plaintiff is the administrator of the estate of Eudora Knox Lincoln, deceased. Eudora Knox Lincoln was a resident of Arkansas, and died intestate on' August 24, 1921. The decedent was the widow of C. J. Lincoln, deceased, and as such had inherited from her husband certain real and personal property to the amount of $125,339.12. On March 13, 1920, Mrs. Eudora K. Lincoln conveyed to her son and daughter, C. K. Lincoln and Georgia L. Shipton, the entire inheritance she had received from her husband. On the same day and in express consideration for the transfer, C. K. Lincoln and Georgia L. Shipton executed the following written instrument, viz:
Little Rook, Ark., March IS, 19W. .
For AND in consideration of certain transfers of realty and personalty belonging to the estate of C. J. Lincoln this day made to us by Mrs. Eudora Knox Lincoln, we undertake and agree that we will :
(1) Pay Mrs. Eudora Knox Lincoln the sum of six thousand dollars ($6,000) per annum, payable five hundred dollars ($500) per month, in advance, as long as she shall live.
*202 (2) Pay taxes and insurance on property owned by Mrs. Eudora Knox Lincoln as long as she shall live, to an amount not to exceed fifteen hundred dollars ($1,500) per year, as paid by her for these same purposes on the same property in the year of nineteen hundred and nineteen (1919).
(3) Hold the estate of C. J. Lincoln as our joint and undivided property, as long as the said Mrs. Eudora Knox Lincoln shall live.
Given under our hands this 13th day of March, 1920.
C. K. Lincoln.
Georgia Lincoln Shipton.
The Commissioner of Internal Revenue, in assessing an estate tax against the estate of Mrs. Lincoln, following an audit duly made, included as part of the decedent’s estate the entire value of the estate so conveyed, and levied and collected an additional estate tax of $2,591.95 by reason thereof. Subsequent to the payment thereof the administrator filed a claim for refund, which was denied, and this suit followed to recover the above amount.
Section 402 of the revenue act of 1918, 40 Stat. 1097, provides, in part, as follows:
“ That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real and personal, tangible or intangible, wherever situated—
“(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * * intended to take effect in possession or enjoyment at or after his death * * * except in a case of a bona fide sale for a fair consideration in money or money’s worth.”
The sole issue in this case is whether the transfer made as described was intended to take effect in possession and enjoyment after death or constituted a bona fide sale for a fair consideration in money or money’s worth. In the solution of this issue we think it essential to not only consider the transaction from a mere paper aspect, but recourse must be had to the situation of the parties at the time the papers were executed and what was the real intent of the parties with reference to their execution. If it was the intention of the decedent to completely and irrevocably divest herself of *203 all title, interest, and control of the property conveyed, the transaction is a sale.
No charge of bad faith or attempt to evade taxation is made. Two factors disclosing intent, and from which a legitimate inference of the purpose of the transfer may be made, are, first, an absolute conveyance of the property which the decedent had inherited from her deceased husband, and, second, the contract to receive annually as consideration therefor the sums mentioned in the contract, constituting a closed transaction, one not dependent upon any future contingency or event. True, the grantees agreed to hold the entire estate of the late C. J. Lincoln as their joint and undivided property so long as the mother lived, but this obligation created in this wise and for this especial transaction did not postpone the vesting of title to the grantees until the mother’s death. It was in part consideration for the transfer, a contractual obligation to do a certain thing, or rather to refrain from doing a certain thing as security for the performance of the obligations of a contract. Assuredly it is not to be claimed that Mrs. Lincoln did not immediately divest herself of all title, right, or interest in the property conveyed. Beyond all doubt that was her intent. Having confidence in her children, to whom the property would eventually go, she wished to be freed from its control, to vest title in her children, providing only for the annuities to be paid her during life. The children were put into immediate possession and enjoyment of the estate; they were free to use it as their judgment dictated; and if the income therefrom exceeded the sums to be paid the mother annually, the excess was their property. Treated as a trust, immediate possession and enjoyment exempts the property from taxation, and treated as a bona fide sale accomplishes the,same result.
The defendant contends that the self-imposed obligation on the part of the grantees to hold the property in joint and undivided ownership necessarily postpones the vesting of ■ absolute title and dominion over the property until after .the mother’s death; that in effect it is a reservation of interest and title to the property which renders the transaction as one of a testamentary character. The agreement of the *204 children, construing the conveyance and the agreement as one transaction, discloses that not only the property transferred by the mother was to be so held, but their own inheritance, twice as much in value, from the father, was included in the so-called restriction. Surely it may not be contended that the mother acquired by the transaction any title to the children’s two-thirds interest included in the agreement. In our view of the situation the children’s agreement amounted to no more than an express pledge, a security provision, to assure the grantor that the contract to paj the amount so stipulated would be faithfully and fully executed. A breach of the contract on the part of the children would not reinvest title in the mother. Her remedies in the event of a breach are too well established to warrant citation. So far as the grantor was concerned, by the transaction she was legally divested of title to the real and personal property conveyed, as though she had made the conveyance independently of the contract. As said by the Supreme Court in Shukert v. Allen, 273 U. S. 545-547: “ Of course, it was not argued that every vested interest that would manifestly take effect in actual enjoyment after the grantor’s death was within the statute.”
Was the transfer made for a “ fair consideration in money or money’s worth ” ? It is conceded that the sums to be paid by the children to the mother amounted to six per centum per annum upon the value of the property conveyed. It is true the mother parted with the corpus of the estate. What her age was or the date of the transfer is not shown. Keeping in mind the contemplated purpose of the transaction, a family disposition of the assets of a deceased husband and- father, a mutual wish that the children should take immediately the property in consideration of a provision for the mother’s support, it would be difficult indeed to hold the consideration inadequate. Manifestly it has none of the characteristics of a gift inter vivos, and the sums to be paid under the children’s agreement were fair, just, and in nowise disproportionate to the property received.
We think the case falls within the decision announced in the following cases: Ferguson v. Dickson, 300 Fed. 961 (certiorari denied, 266 U. S. 628); Polk v. Miles, 268 Fed. 175; *205 Shukert v. Allen, supra, and that the plaintiff is entitled to recover.
Judgment for plaintiff. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.